**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KRISTEN LUDOVICUS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| DOMENIC CAPPELLUTI, individually, ) | |
| JODY ADAMS, individually, ) | |
| WAYNE WALLES, individually, ) | |
| CITY OF WAUKEGAN, ) | |
| JOHN D. IDLEBURG, individually, ) | |
| COUNTY OF LAKE, ) | |
| LAKE COUNTY SHERIFF'S OFFICE, ) | Jury Trial Demanded |
| GIANNI GIAMBERDUCA, individually, ) | |
| JAVIER PEREZ, individually, ) | |
| ERIC KAECHELE, individually, ) | |
| TOM ROBERTSON, individually, ) | |
| S. STASSI, individually, ) | |
| P. REGISTER, individually, ) | |
| E. GOMEZ, individually, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT AT LAW

Plaintiff KRISTEN LUDOVICUS complains of Defendants DOMENIC CAPPELLUTI, individually, JODY ADAMS, individually, WAYNE WALLES, individually, CITY OF WAUKEGAN, JOHN D. IDLEBURG, individually, COUNTY OF LAKE, LAKE COUNTY SHERIFF'S OFFICE, GIANNI GIAMBERDUCA, individually, JAVIER PEREZ, individually, ERIC KAECHELE, individually, TOM ROBERTSON, individually, S. STASSI, individually, P. REGISTER, individually, TFO E. GOMEZ, individually (collectively, the "Defendants"), as follows:

NATURE OF THE CASE

1.     Plaintiff KRISTEN LUDOVICUS (herein "Plaintiff" or "Ludovicus") brings this civil action pursuant to applicable Illinois law, and also 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

2.     This action arises from an underlying conspiracy between Defendant DOMENIC CAPPELLUTI (herein "Det. Cappelluti"), who is a Detective in the police department of the CITY OF WAUKEGAN, and his long-time friend Defendant JODY Adams (herein "Adams").

3.     Defendants Det. Cappelluti and Adams conspired to "tip off" Defendant LAKE COUNTY SHERIFF'S OFFICE ("LCSO") to investigate and cause a warrant for the arrest of the Plaintiff's husband to issue as a means to injure his credibility and retaliate for blowing the whistle on illegal conduct that Plaintiff's husband witnessed and had evidence of first-hand at the automobile dealership where Plaintiff's husband worked, which was managed by Adams.

4.     The conspiracy of Det. Cappelluti and Adams was largely "successful"; when law enforcement personnel of the LCSO and DEA[1] executed the arrest warrant of Plaintiff's husband on March 12, 2019. Plaintiff's husband as well as Plaintiff

---

[1] Upon information and belief, the "Chicago Office" of the United States Drug Enforcement Agency, led by Special Agent in Charge Robert J. Bell, was also involved in the facts alleged in this case, principally through two of its officers: TFO/Agent J. Waites and TFO/Agent Anthony Anglada, who both were part of the Special Investigations Group of the LCSO. Out of an abundance of caution, these officers and the DEA have not been named as Defendants in this case, however Plaintiff specifically reserves the right to join them in this action if in the course of discovery or subsequent investigation there is revealed any illegal conduct on their part.

herself were arrested, their small children were traumatized, their home was significantly damaged, and their legal property was unlawfully taken and destroyed or not returned.

5.    Plaintiff brings this civil action against Det. Cappelluti, WAYNE WALLES, individually, CITY OF WAUKEGAN, COUNTY OF LAKE, LCSO, JOHN D. IDLEBURG, individually, GIANNI GIAMBERDUCA, individually, JAVIER PEREZ, individually, ERIC KAECHELE, individually, TOM ROBERTSON, individually, P. REGISTER, individually, E. GOMEZ, individually (the "State Defendants") for their tortious conduct and their deprivation of her rights as a United States citizen, as secured by the Fourth and Fourteenth Amendment of the United States Constitution.

<u>JURISDICTION AND VENUE</u>

6.    This Court has federal subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

7.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

8.    Venue is also proper in this district under 28 U.S.C. § 1391(b)(1) because at least on the Defendants resides in this district and, on information and belief, all of the Defendants are residents, within the meaning of the statute, of the State of Illinois, in which this district is located.

<u>PARTIES</u>

9.      Plaintiff is a 38-year-old woman presently residing in the state of Oklahoma. She is married to Grayson Ludovicus ("Grayson").

10.      Defendant Det. Cappelluti is a Detective in the Waukegan Police Department and at all times relevant hereto was acting under color of state law by virtue of his exercise of authority as a police detective.

11.      Upon information and belief, Defendant Adams was a managing partner of the Napleton Dodge automobile dealership in Arlington Heights, Illinois, where Plaintiff's husband Grayson was also employed. Adams was Grayson's supervisor.

12.      Defendant WAYNE WALLES was at all material times the police chief of the police department for the CITY OF WAUKEGAN, and a final policymaker responsible for establishing and implementing the policies and practices of the police department of the CITY OF WAUKEGAN, and for ensuring that the policies and practices comply with federal and state requirements. At all material times, WAYNE WALLES was acting under color of law. Plaintiff sues WAYNE WALLES in his official and individual capacities.

13.      Defendant CITY OF WAUKEGAN is an Illinois unit of local government situated in the northeastern corner of Illinois along the shores of Lake Michigan. Its primary offices are located in Waukegan, Illinois. At all material times, Defendant CITY OF WAUKEGAN was responsible for establishing and implementing the policies and practices of its law enforcement departments, officers and personnel and

for ensuring that those policies and practices comply with federal and state requirements.

14.     Defendant JOHN D. IDLEBURG was at all material times the Sheriff of Lake County, a final policymaker for COUNTY OF LAKE and LCSO responsible for establishing and implementing the policies and practices of LCSO, and for ensuring that the policies and practices comply with federal and state requirements. At all material times, he was acting under color of law. Plaintiff sues him in his official and individual capacities.

15.     Defendant COUNTY OF LAKE is an Illinois unit of local government situated in the northeastern corner of Illinois along the shores of Lake Michigan. Its primary offices are located in Waukegan, Illinois. At all material times, Defendant COUNTY OF LAKE was responsible for establishing and implementing the policies and practices of its law enforcement departments, officers and personnel and for ensuring that those policies and practices comply with federal and state requirements.

16.     Defendant LCSO is an agency of Lake County with its primary offices in Waukegan, Illinois. At all material times, LCSO, through its Operations Division, managed and operated the Special Investigations Group and was responsible for supervising and training its officers, agents and personnel and ensuring that the LCSO policies and practices comply with federal and state requirements.

16.     Defendant GIANNI GIAMBERDUCA ("Sgt. Giamberduca") was at all material times a Sergeant and employee of the LCSO or Lake County acting under

color of law and within the scope of his employment. Plaintiff sues Sgt. Giamberduca in his individual capacity.

17.    Defendant JAVIER PEREZ ("Det. Perez") was at all material times a Detective and employee of the LCSO or Lake County acting under color of law and within the scope of his employment. Plaintiff sues Det. Perez in his individual capacity.

18.    Defendant ERIC KAECHELE was at all material times a Detective and employee of the LCSO or Lake County acting under color of law and within the scope of his employment. Plaintiff sues Defendant Detective ERIC KAECHELE in his individual capacity.

19.    Defendant TOM ROBERTSON was at all material times a Task Force Officer and employee of the LCSO or Lake County acting under color of law and within the scope of his employment. He also serves as Sergeant at the Wauconda Police Department. Plaintiff sues Defendant TOM ROBERTSON in his individual capacity.

20.    Defendant S. STASSI was at all material times a Task Force Officer and employee of the LCSO or Lake County acting under color of law and within the scope of his employment. Plaintiff sues S. STASSI in his individual capacity.

21.    Defendant P. REGISTER was at all material times a Task Force Officer and employee of the LCSO or Lake County acting under color of law and within the scope of his employment. Plaintiff sues Defendant P. REGISTER in his individual capacity.

22.     Defendant E. GOMEZ was at all material times a Task Force Officer and employee of the LCSO or Lake County acting under color of law and within the scope of his employment. Plaintiff sues Defendant E. GOMEZ in his individual capacity.

<u>FACTUAL ALLEGATIONS</u>

23.     Upon information and belief Det. Cappelluti and Adams have been close friends since the early 1990s. In recent years, Adams hired a son of Det. Cappelluti to work for him at the auto dealership managed by Adams. Adams also has a criminal background involving battery, reckless driving, multiple DUIs, and felony narcotics charges.

24.     Upon information and belief, sometime before March 12, 2019, Det. Cappelluti and Adams discussed the fact that Plaintiff's husband Grayson was threatening to bring a whistleblower action against the auto dealership which Adams managed and was a managing partner, for illegal business practices.

25.     Det. Cappelluti and Adams discussed how to retaliate against Grayson for this. They determined that they should investigate Grayson's having applied for a "FOID card" which would constitute a crime based upon Grayson's prior criminal convictions.

26.     Det. Cappelluti either directly contacted LCSO and Sgt. Giamberduca or one of the other Defendants named in this Complaint about investigating Grayson and securing a warrant for his arrest, or advised Adams to use Det. Cappelluti's connections with LCSO and Sgt. Giamberduca and the other Defendants to do so.

27. As a result of this planned action on the part of Det. Cappelluti and Adams, upon information and belief LCSO and Sgt. Giamberduca did then investigate Grayson's FOID application, and cause a warrant for Grayson's arrest to issue.

28. On the morning of March 12, 2019, LCSO officers and agents belonging to the Special Investigations Group of its Operational Division including Sgt. Giamberduca entered Plaintiff's residence located at 28104 W. Niagara Street in Lakemoor, Illinois (part of the unincorporated part of Lake County, Illinois) for the purpose of executing an arrest warrant issued against Grayson on a single charge of "False Firearm Owner's Identification Card Application (Class 2 Felony)".

29. There was no search warrant or legal authorization to search the Plaintiff's residence or seize her personal property.

30. State Defendants set up surveillance outside Plaintiff's residence beginning at approximately 5:30 a.m., where they previously observed Plaintiff with her two children, who were 6 years old and 15 months old at the time.

31. At 7:32 a.m. Det. Perez along with S. STASSI rang the "video doorbell" at Plaintiff's residence and spoke to Plaintiff "through the doorbell."

32. When these officers requested that Plaintiff open the door to speak to them, Plaintiff responded that she was breastfeeding her young child and did not "feel comfortable coming to the door."

33. Approximately an hour later, Grayson spoke with Det. Perez on the phone, the conversation of which was recorded on Det. Perez's "bodycam".

34.     In that call, upon information and belief Det. Perez indicated to Grayson that he would "need to speak with Kristen in person." Det. Perez did not indicate why LCSO needed to speak with Kristen, and did not identify any charges that were being made against her.

35.     At approximately 10:00 a.m., the U.S. Marshals Service – Great Lakes Regional Fugitive Task Force (USMS – GLRFTF)[2] responded to the scene upon a request to assist in warrant service made by Det. Perez, and "knocked on the door and made their presence known."

36.     In executing the arrest warrant, State Defendants and/or USMS – GLRFTF at State Defendants' request forced entry into the residence, causing damage.

37.     Upon entry, certain of the State Defendants handcuffed both Grayson and the Plaintiff and escorted them outside the residence, at which point State Defendants began making threats to them both that they would both "go to jail for a long time" and "never see your kids again" unless they both signed a waiver to permit State Defendants to conduct a search of the residence.

---

[2] Upon information and belief, U.S. Marshals Service, along with the "Chicago Office" of the United States Drug Enforcement Agency, led by Special Agent in Charge Robert J. Bell, was also involved in the facts alleged in this case, principally through two of its officers: TFO/Agent J. Waites and TFO/Agent Anthony Anglada, who both were part of the Special Investigations Group of the LCSO. Out of an abundance of caution, these officers, the DEA and U.S. Marshals Service have not been named as Defendants in this case, however Plaintiff specifically reserves the right to join them in this action if in the course of discovery or subsequent investigation there is revealed any illegal conduct on their part.

38.     The State Defendants disabled the video security system in Plaintiff's residence and also opened the closed gun safe near the front entrance of the residence, discovering that it contained firearms and ammunition.

39.     Upon obtaining the coerced signatures on the search waiver form, the State Defendants conducted a search of Plaintiff's residence and removed from the gun safe that they opened two antique rifles belonging to Plaintiff and ammo cans containing a number of rounds of ammunition in various calibers.

40.     The State Defendants also removed other items from Plaintiff's residence, some of which were detailed in their reports, while other items that they removed were not indicated in the reports.

41.     The State Defendants subsequently visited the residence of Plaintiff's father in Ingleside, Illinois, where they removed ten additional firearms registered to and owned by the Plaintiff, some cases and bags, and various rifle and pistol magazines.

42.     The State Defendants arrested both Grayson and Plaintiff, although the arrest warrant was only issued as to Grayson, and Plaintiff had no prior criminal background, or records of arrest.

43.     Initially the State Defendants did not appear inclined to arrest Plaintiff, but when she refused to cooperate with their demand that she leave her children and agree to be transported to LCSO for questioning, they arrested her on the charge of obstruction of justice.

44.     While in custody, the State Defendants continued to make threats that if Plaintiff refused to cooperate and answer their questions, she would go to prison, her husband would go to prison, and neither of them would ever see their kids again. The State Defendants repeatedly demanded that Plaintiff provide false information against Grayson concerning their accusations that he was trafficking in illegal firearms.

45.     The State Defendants used various forms of threats and intimidation against Plaintiff while she was in custody.

46.     During the State Defendants' detention of the Plaintiff, Ludovicus repeatedly stated that she was the mother of a very young child who was breastfeeding.

47.     Plaintiff stated that she was extremely uncomfortable due to her need to breastfeed, or to express her breastmilk. The State Defendants and other personnel failed to heed any of her warnings and requests.

48.     Plaintiff repeatedly requested that she be permitted to contact a relative or friend who could bring a breast pump from her residence so she could relieve her extreme discomfort from not being permitted to nurse her child by pumping.

49.     However, the State Defendants and other personnel ignored her requests, which caused Plaintiff considerable physical pain and discomfort, and which also caused undue emotional stress and trauma, and ultimately caused her to entirely lose her breast milk supply, forcing her to stop nursing her baby altogether.

11

50.     From the time that the State Defendants made contact with Plaintiff at her residence, and through the time that she was arrested and detained, Plaintiff also stated that she was suffering from Lyme Disease, but failed to offer her any of the medical accommodations and assistance that she requested.

51.     Plaintiff repeatedly requested that she be permitted to call her attorney, and the State Defendants refused to permit her to contact or consult with her attorney.

52.     The obstruction of justice charge giving rise to Plaintiff's arrest was ultimately dropped.

53.     At various court appearances involving Plaintiff and Grayson, Det. Cappelluti was inexplicably present, in spite of the fact that upon information and belief he had no official reason for being present in court on those occasions. He did not step up to the bench in connection with any of the other cases on the court's docket, and appeared to be present solely to determine what took place in connection with Plaintiff and Grayson's cases.

54.     In connection with the twelve firearms owned by the Plaintiff, and the related ammunition and other items seized from Plaintiff's residence and the residence of her father, all of those items were destroyed by one of more of the State Defendants, including two antique rifles which were passed down through Plaintiff's family.

55.     Finally, one or more of the State Defendants also contacted the Plaintiff's employer to advise that she had been arrested, and as a result, the Plaintiff was terminated from her $90,000 a year position.

<u>COUNT I</u>
Civil Conspiracy
(Det. Cappelluti and Adams)

56.     Defendants Det. Cappelluti and Adams agreed and/or conspired with one another to retaliate against Grayson and his family, including Plaintiff.

57.     Certain laws, including the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.,* provide that it is illegal to retaliate against "whistleblowers".

58.     Defendant Det. Cappelluti and Adams conspired to use Det. Cappelluti's authority and contacts as a member of law enforcement to cause LCSO and Sgt. Giamberduca to initiate an investigation of Grayson and have an arrest warrant issued against him.

59.     By taking these actions, Adams would secure for himself and the business in which he had a partnership interest the advantage of neutralizing Grayson as a whistleblower, which in turn would benefit Det. Cappelluti as close friend of Adams and father of one of Adams' employees.

60.     As a result of the foregoing conspiracy, Plaintiff was injured and suffered damages.

<u>COUNT II</u>
Civil Conspiracy arising pursuant to 42 U.S.C. § 1983
(Det. Cappelluti and Adams)

61.     Plaintiff restates and realleges paragraphs 1 through 60, inclusive, as if set forth fully herein.

62.     In addition to the civil conspiracy at common law, the illegal actions of Det. Cappelluti and Adams also constitute a violation of 42 U.S.C. § 1983.

63.     As a result of the conduct alleged against Det. Cappelluti and Adams herein, Plaintiff was deprived of her constitutional rights, including her rights against arrest, search and seizure arising under the Fourth and Fourteenth Amendments of the United States Constitution.

64.     As a result of the foregoing conspiracy, Plaintiff was injured and suffered damages.

<u>COUNT III</u>
42 U.S.C. § 1983
Illegal Search, Seizure, Arrest, and Detention
in Violation of the Fourth and Fourteenth Amendment
(*Against the State Defendants*)

65.     Plaintiff restates and realleges paragraphs 1 through 64, inclusive, as if set forth fully herein.

66.     Pleading in the alternative, the State Defendants had no legal basis and no validly issued search or arrest warrant as to Plaintiff or Plaintiff's personal property.

67.    The State Defendants also were bound by policies and legal requirements that law enforcement personnel not misuse official law enforcement resources in furtherance of personal or pecuniary interests of personnel.

68.    The State Defendants owed duties to the Plaintiff and public in general not to misuse public resources or personnel in furtherance of their own personal or pecuniary interests.

69.    Defendants WAYNE WALLES, the CITY OF WAUKEGAN, JOHN D. IDLEBURG, COUNTY OF LAKE, and LCSO and were at all times relevant hereto charged with assuring that law enforcement personnel adhere to the law in the execution of their official duties.

70.    In contravention of these duties, one or more of the State Defendants engaged in unconstitutional conduct against Plaintiff and her rights, which was objectively unreasonable and was intentional, with malice, and/or with reckless indifference to Plaintiff's rights.

71.    As a direct and proximate cause of the State Defendants' unconstitutional conduct, Plaintiff suffered pain, suffering, emotional and mental distress, and injuries, and Plaintiff was otherwise deprived of the use and enjoyment of her property.

<u>COUNT IV</u>
42 U.S.C. § 1983
Denial of Health Care in Violation of the Fourteenth Amendment
(*Against the State Defendants*)

72.   Plaintiff restates and realleges paragraphs 1 through 64, inclusive, as if set forth fully herein.

73.   Similarly, and pleading in the alternative, the State Defendants had no legal basis or prevailing interest while Plaintiff was in their custody in denying the Plaintiff the ability to nurse her child, pump her breastmilk, or address her other health concerns.

74.   The State Defendants, including WAYNE WALLES, the CITY OF WAUKEGAN, JOHN D. IDLEBURG, COUNTY OF LAKE, and LCSO were at all times relevant hereto charged with assuring that law enforcement personnel adhere to the law in the execution of their official duties and treatment of detainees.

75.   The State Defendants' unconstitutional conduct was objectively unreasonable and was intentional, with malice, and/or with reckless indifference to Plaintiff's rights.

76.   As a direct and proximate cause of the State Defendants' unconstitutional conduct, Plaintiff suffered pain, suffering, emotional and mental distress, and injuries.

<u>COUNT V</u>
42 U.S.C. § 1983
Failure to Intervene in Violation of the Fourteenth Amendment
(*Against the State Defendants*)

77.     Plaintiff restates and realleges paragraphs 1 through 64, inclusive, as if set forth fully herein.

78.     Similarly, and pleading in the alternative, the State Defendants had no legal basis or prevailing interest in arresting or detaining the Plaintiff, evidenced by the fact that all charges against her were ultimately dropped.

79.     While Plaintiff was in the custody of the State Defendants, she requested and was denied the Plaintiff the ability to nurse her child, pump her breastmilk, or address her other health concerns.

80.     While in custody by these State Defendants, Plaintiff's release was conditioned upon her providing evidence concerning Grayson.

81.     The State Defendants' failure to intervene was objectively unreasonable and was intentional, with malice, and/or with reckless indifference to Plaintiff's rights.

82.     As a direct and proximate cause of the State Defendants' unconstitutional conduct, Plaintiff suffered pain, suffering, emotional and mental distress, and injuries.

COUNT VI
42 U.S.C. § 1983
Denial of Adequate Medical Care – *Monell Claim*
(*Against Defendant Idleburg and LCSO*)

83.     Plaintiff restates and realleges paragraphs 1 through 64, inclusive, as if set forth fully herein.

84.     Under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), Defendants JOHN D. IDLEBURG and LCSO are liable for the damages suffered by Plaintiff.

COUNT VII
Illinois Law
Willful and Wanton Conduct
(*Against the State Defendants*)

85.     Plaintiff restates and realleges paragraphs 1 through 64, inclusive, as if set forth fully herein.

86.     At all material times, the State Defendants had a duty to apply a reasonable degree of care and skill in the arrest and detention of Plaintiff.

87.     Moreover, at all material times, the State Defendants had a duty to apply a reasonable degree of care and skill in finding the existence of probable cause to conduct a search of Plaintiff's residence.

88.     In contravention of those duties, the State Defendants failed to act in good faith, but instead acted with malice, or with actual or deliberate intention to cause harm, or with utter indifference to or conscious disregard for Plaintiff's safety and property.

89.     As a direct and proximate cause of the State Defendants' conduct, Plaintiff suffered pain, emotional and mental distress, and injuries.

## COUNT VIII
Illinois Law
Intentional Infliction of Emotional Distress
(*Against the State Defendants* and Adams)

90.     Plaintiff restates and realleges paragraphs 1 through 64, inclusive, as if set forth fully herein.

91.     The State Defendants, as well as Adams, engaged in extreme and outrageous conduct intended to embarrass, threaten, humiliate, and otherwise inflict emotional distress upon Plaintiff.

92.     These Defendants' actions, as set forth above, were rooted in an abuse of power and/or authority, all designed to retaliate against Plaintiff and Plaintiff's husband.

93.     These Defendants' actions, as set forth above, were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress on Plaintiff and with reckless disregard of that probability.

94.     These Defendants' actions, as set forth above, were intentional, with malice, and/or with reckless indifference to Plaintiff's rights.

95.     As a direct and proximate cause of the State Defendants' conduct, Plaintiff suffered pain, emotional and mental distress, and injuries.

## COUNT IX
Illinois Law
False Imprisonment
(*Against State Defendants*)

96. Plaintiff restates and realleges paragraphs 1 through 64, inclusive, as if set forth fully herein.

97. Plaintiff was restrained by the State Defendants.

98. The State Defendants acted without having reasonable grounds to believe that the Plaintiff committed an offense.

99. The State Defendants' actions, as set forth above, were intentional, with malice, and/or with reckless indifference to Plaintiff's rights.

100. As a direct and proximate cause of the State Defendants' conduct, Plaintiff suffered pain, emotional and mental distress, and injuries.

## COUNT X
Illinois Law
Indemnification
(*Against Defendant City of Waukegan*)

101. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which their employees are liable within the scope of their employment activities. *See* 745 ILCS 10/9-102.

102. Defendants Det. Cappelluti and WAYNE WALLES were at times relevant hereto employees of the CITY OF WAUKEGAN and acted within the scope of their employment in committing the misconduct described above. CITY OF WAUKEGAN is therefore obligated to pay any judgment entered against its employees.

COUNT XI
Illinois Law
Indemnification
(*Against Defendant LCSO/County of Lake*)

103.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which their employees are liable within the scope of their employment activities. *See* 745 ILCS 10/9-102.

104.    Defendants JOHN D. IDLEBURG, Sgt. Giamberduca, Det. Perez, ERIC KAECHELE, TOM ROBERTSON, P. REGISTER, and E. GOMEZ were employees of LCSO and/or COUNTY OF LAKE at all material times and acted within the scope of their employment in committing the misconduct described above. LCSO and/or COUNTY OF LAKE are therefore obligated to pay any judgment entered against its employees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff KRISTEN LUDOVICUS respectfully requests this Court to (a) enter judgment in her favor and against Defendants; (b) award her compensatory and punitive damages in an amount to be determined by a jury at trial; (c) award her attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and (d) for such other and further relief as this Court deems just and equitable.

21

## <u>JURY DEMAND</u>

Plaintiff KRISTEN LUDOVICUS demands a jury trial on all issues.


Dated: March 9, 2021

Respectfully submitted,
Plaintiff KRISTEN LUDOVICUS


    /s/    Gary A. Grasso
By:    Gary A. Grasso, Esq.
        One of her attorneys

Gary A. Grasso, Esq. (ARDC #3121760)
    ggrasso@grassolaw.com
Adam R. Bowers, Esq. (ARDC #6277163)
    abowers@grassolaw.com
GRASSO LAW, P.C.
38 S. Blaine Street, Suite 100
Hinsdale, IL 60521
(630) 654-4500