UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRISTEN LUDOVICUS, | |
| Plaintiff, | No. 21-cv-1332 |
| v. | Judge Thomas M. Durkin |
| JOHN D. IDLEBURG, GIANNI GIAMBERDUCA, JAVIER PEREZ, ERIC KAECHELE, AND THE LAKE COUNTY SHERIFF'S OFFICE, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed this lawsuit under 42 U.S.C. § 1983 alleging, *inter alia*, that Defendants violated her Fourth and Fourteenth Amendment rights when they falsely arrested her, searched her home, seized her property, interrogated her, and failed to provide adequate health care to address her Lyme disease and need to breastfeed. The details of the complaint are set forth below. Before the Court is a motion for summary judgment filed by Defendants under Federal Rule of Civil Procedure 56. R. 95. For the following reasons, the motion is granted.

1

## Background

The following facts are taken from the parties' Local Rule 56.1 submissions,[1] the materials cited therein, and other aspects of the record in this case. All facts are undisputed unless otherwise noted.

Plaintiff claims this lawsuit arises from an underlying conspiracy between Domenic Cappelluti ("Cappelluti"), a police detective for the City of Waukegan, and Jody Adams ("Adams"). Plaintiff is married to Grayson Ludovicus ("Grayson"). Grayson used to be named Daniel Wayne Borke, until he legally changed his named in November 2015. Before he changed his name, he was convicted of two felonies. After his name change, Grayson applied for and obtained a Firearm Owners Identification Card ("FOID"), something he was ineligible for because of his felony convictions. Plaintiff also had a FOID.

Adams was a manager of an automobile dealership where Grayson was an employee. Grayson was allegedly threatening to bring a whistleblower action against the dealership for illegal business practices. Adams allegedly conspired with

---

[1] In Defendants' response to Plaintiff's statement of additional facts, Defendants contend that certain statements of additional facts contain two or more separate statements, which causes the total number of additional facts to exceed the forty-amount allowable under Local Rule 56.1(b)(3)(C), (d)(5). R. 117 at 2 n.2. Since Plaintiff did not seek leave to submit more than forty statements of fact, Defendants argue the Court should strike "at least 14 statements, including paragraphs 25, 31, 36, and 39[.]" *Id.* "While the Seventh Circuit routinely upholds strict enforcement of Local Rule 56.1, district courts retain wide discretion to police the parties' submissions." *Ragan v. BP Prod. N. Am., Inc.*, No. 1:17 C 9208, 2019 WL 13171295, at *1 (N.D. Ill. Aug. 13, 2019). "Where a party makes a good-faith effort to comply with the rule," courts do not "lightly disturb the litigation to create needless additional work." *Id.* Here, Plaintiff's statement of additional facts numbers forty and she has made a good-faith effort to comply with the rule. The Court finds it unnecessary to parse through the additional facts to count the number of separate statements and strike those statements Defendants wish to be stricken.

Cappelluti to retaliate against Grayson by having him investigated for applying for a FOID as a convicted felon. Cappelluti called Lake County Sergeant Gianni Giamberduca ("Giamberduca") and provided the tip on Grayson's FOID.

On March 8, 2019, an arrest warrant was issued for Grayson for a false FOID application.[2]

Beginning around 5:30 a.m. on March 12, 2019, officers staked out Grayson's home, observing two cars in the driveway, neither of which moved during the entirety of the surveillance. At approximately 7:30 a.m., Lake County Detective Javier Perez ("Perez") and another officer approached the home and rang the Ring doorbell. Plaintiff was able to communicate with Perez through the Ring device without having to open the door. Perez told Plaintiff he needed to speak to her at the door and never mentioned the warrant for Grayson's arrest. Plaintiff told Perez she was breastfeeding her baby and did not feel comfortable coming to the door. When asked if Grayson could come to the door, Plaintiff stated he left thirty minutes earlier to go to work. Perez indicated he would standby while Plaintiff called Grayson. Plaintiff then told Perez that Grayson would call dispatch.

After a few minutes, Perez again rang the Ring doorbell and knocked on the door several times with no response for several minutes. Officers saw movement through the windows on the second floor of the house above the garage. Plaintiff then communicated through the Ring doorbell stating Grayson would be home in forty-five

---

[2] The record is silent on the reason Grayson's FOID application justified the arrest warrant, whether because he failed to disclose his prior felonies under his original name, failed to disclose his name change, or some other reason. But the parties do not dispute an arrest warrant was issued for Grayson in connection with him applying for a FOID.

3

minutes. Perez responded that he needed to speak with her and review her FOID, again, never mentioning he was there to execute the arrest warrant. Plaintiff insisted she was not coming to the door without Grayson present, that she was taking care of her two children, and stated she had Lyme disease and was experiencing anxiety. The officers then left.

Approximately an hour later, Grayson called Perez claiming he did not spend the night at his home and that he could be home within the next fifteen minutes, which was in fact untrue. Grayson later admitted that he was in the residence the entire time. Grayson agreed to turn himself in, but asked Perez to give him time to arrange for funds to pay his bond. Perez continued to ask if he could speak with Plaintiff and review her FOID, yet Grayson was resistant to that request.

After waiting about 90 minutes for Grayson to surrender, the U.S. Marshall's forced entry into Plaintiff's home around 10 a.m. Grayson immediately exited the house and the U.S. Marshall's arrested and handcuffed him. Plaintiff was detained outside her home without handcuffs on the belief that she was hiding her husband and obstructing his arrest.

When officers entered the home, they observed a gun safe near the front door that was open. Plaintiff contends that the safe was only "cracked" open upon initial entry and then "wide" open after entry. Plaintiff speculates that the safe was further opened after the entry and posits an illegal search may have happened when the officer's body cameras were turned off, in accordance with U.S. Marshall policies. However, Plaintiff provides no evidence that any officer illegally searched the safe.

How far open the gun safe was, however, is immaterial given that it was open and both Plaintiff and Grayson signed a consent to search the home. The search yielded guns, ammunition, and psilocybin.

During her detention outside her home, Plaintiff never stated a need to breastfeed nor requested any accommodations for her Lyme disease. She was then transported uncuffed by Giamberduca to Lakemoor Police Department ("Lakemoor PD"), during which Plaintiff discussed her Lyme disease but never asked for any accommodations or to express milk. Plaintiff's children were left with her cousin. Before leaving with Giamberduca, Plaintiff did not mention the baby needing breastmilk or the need to breastfeed.

At Lakemoor PD, Plaintiff requested food and water and was given both on occasions, and also refused food or water on other occasions. She also did not mention a need to breastfeed or make any specific requests to accommodate her Lyme disease.[3] During her questioning, Plaintiff admitted Grayson was laid off from his job on March 11, 2019, that she knew about Grayson's arrest warrant on March 11, 2019, and that she assumed police were at her house that morning to execute the arrest warrant.

During his questioning, Grayson told the officers he was in the residence that morning. Plaintiff was arrested for obstruction of justice.

---

[3] The entirety of Plaintiff's detention at the Lakemoor PD is captured by overhead video monitoring. Therefore, there are no genuine disputes about Plaintiff's interactions and questioning at Lakemoor PD, whether she was denied water, or whether her requests to accommodate her Lyme disease and to express her milk went unanswered. *See Kailin v. Vill. of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023) (explaining that video evidence "can eviscerate a factual dispute only when the video is so definitive that there could be no reasonable disagreement about what the video depicts").

Plaintiff was then transported by Perez to Lake County Jail, placed a phone call to her cousin who was watching her children, and never mentioned the need to express milk. During her medical intake at Lake County Jail, Plaintiff was offered a breast pump but refused it, instead requesting her own personal pump. The medical intake form referenced Plaintiff's Lyme disease and scheduled appointments to determine her medical needs.

A Lake County Grand Jury indicted Plaintiff for obstruction of justice, a Class 4 felony. Plaintiff was released from Lake County Jail on March 13, 2019. Plaintiff's criminal charges were dismissed after Grayson pled guilty to obstruction of justice.

Plaintiff brought the instant lawsuit asserting claims for civil conspiracy against defendants Cappelluti and Adams (Counts I and II); illegal search, seizure, arrest, and detention against the State defendants[4] (Count III); denial of healthcare against the State defendants (Count IV); failure to intervene against the State defendants (Count V); a *Monell* claim for denial of adequate medical care against defendants Sheriff John Idleburg ("Sheriff Idleburg") and the Lake County Sheriff's Office (the "Sheriff's Office") (Count VI); an indemnification claim against the City of Waukegan (Count X); and an indemnifications claim against Lake County and the Sheriff's Office (Count XI). Plaintiff voluntarily dismissed the state law counts (Counts VII, VIII, and IX). The Court granted in part and denied in part defendants'

---

[4] The complaint defined the "State defendants' as including Cappelluti, Wayne Walles, City of Waukegan, Lake County, Lake County Sheriff's Office, John Idleburg, Gianni Giamberduca, Javier Perez, Eric Kaechele, Tom Roberton, S. Stassi, P. Register, and E. Gomez. R. 1 ¶ 5. Plaintiff voluntarily dismissed defendants Lake County, Tom Robertson, S. Stassi, P. Rigister, and E. Gomez. R. 52.

motions to dismiss, dismissing without prejudice Count VI, the *Monell* claim for denial of adequate medical care, against defendants Sheriff Idleburg and the Sheriff's Office; and dismissing without prejudice Counts III, IV, and V against Cappelluti, Police Chief Wayne Walles, and the City of Waukegan. R. 57. Plaintiff did not file an amended complaint or seek leave to file an amended complaint.

Plaintiff then voluntarily dismissed Cappelluti and the City of Waukegan. R. 100. In her response to the motion for summary judgment, Plaintiff indicates she has settled with Adams. R. 103 at 2. Accordingly, the following counts remain against Sheriff Idelburg, Giamberduca, Perez, Detective Eric Kaechele ("Kaechele"), and the Sheriff's Office: Count III for illegal search, seizure, arrest, and detention in violation of the Fourth and Fourteenth Amendments; Count IV for denial of health care in violation of the Fourteenth Amendment; Count V for failure to intervene in violation of the Fourteenth Amendment; and Count XI for indemnification, but only against the Sheriff's Office.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all the evidence and draw all reasonable inferences from that evidence in

7

the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Discussion

### I. Defendants Lake County Sheriff's Office and Sheriff John Idleburg

The Sheriff's Office claims that it is a non-suable entity and must be dismissed from this case. Under Federal Rule of Civil Procedure 17(b), federal courts look to state law to determine if a defendant can be sued. To be sued in Illinois, a defendant must have a legal existence, either natural or artificial. *Jackson v. Vill. of Rosemont*, 180 Ill. App. 3d 932, 937–38 (1st Dist. 1988). The Sheriff's Office does not have a separate legal existence and "is not a suable entity, instead the suable entity is the Lake County Sheriff in his official capacity." *Hill v. Lake Cnty. of Ill.*, No. 06 C 1002, 2007 WL 9811110, at *2 (N.D. Ill. Mar. 5, 2007). Accordingly, the Sheriff's Office is dismissed from this lawsuit with prejudice.

The same goes for Sheriff Idleburg. Under § 1983 there is no *respondeat superior* liability and "a government official is only liable for his or her own misconduct." *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) (internal citation and quotations omitted). For a supervisor to be liable under § 1983, he must be personally involved in a subordinate's constitutional violation. *Taylor v. Ways*, 999

8

F.3d 478, 493–94 (7th Cir. 2021). Here, Plaintiff produces no evidence that Sheriff Idleburg knew about any of the alleged conduct, facilitated it, approved it, or turned a blind eye to it. *See Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). Summary judgment is granted for Sheriff Idleburg individually.

Counts III and IV also include allegations indicating that Plaintiff brings a *Monell* claim that Sheriff Idleburg is liable in his official capacity for the alleged Fourth and Fourteenth Amendment violations alleged in the complaint. *See* R. 1 ¶¶ 69, 70, 74. The Court previously dismissed without prejudice Count VI, a *Monell* claim against Sheriff Idleburg for denial of adequate medical care, and Plaintiff did not amend her complaint. Accordingly, summary judgment is granted as to the *Monell* claim contained within Count IV for denial of health care in violation of the Fourteenth Amendment.

Sheriff Idleburg may be liable for the *Monell* claim alleged in Count III (Fourth and Fourteenth Amendment violations for unlawful search, seizure, arrest, and detention) under § 1983 if he executed, or instructed others to execute, "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, [that] inflict[ed] the injury." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "[T]o succeed on a *Monell* claim, a plaintiff must show: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final

9

policymaking authority." *Stewardson v. Titus*, 126 F.4th 1264, 1279 (7th Cir. 2025) (internal citations and quotations omitted). Plaintiff presents no evidence that there was a government policy, practice, or custom which caused the deprivation of the constitutional rights alleged in Count III, nor that Sheriff Idleburg (or any other defendant) was responsible for establishing any policy, practice, or custom which resulted in her constitutional injury. *Cf. Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 675 (7th Cir. 2009) ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. Rather, such an official also must be responsible for establishing final government policy on a particular issue.") (internal citation and quotations omitted). Summary judgment is granted to Sheriff Idleburg on Count III, which means there are no remaining claims against the Sheriff in his personal or official capacities. Thus, the Court refers to the remaining defendants (Giamberduca, Perez, and Kaechele) collectively as the "Defendants."

## II. Count III

### A. Fourth Amendment: Detention, Arrest, Search, and Seizure

In Count III, Plaintiff alleges that she was detained and arrested for obstruction of justice, and her house was searched, in violation of the Fourth Amendment, because the officers lacked a warrant. Regarding the detention and arrest, a warrant is not required if the totality of the facts and circumstances known to the officers at the time of the arrest establishes probable cause that a person has

committed a crime. See *Esco v. City of Chicago*, 107 F.4th 673, 676–77 (7th Cir. 2024); *United States v. Paige*, 870 F.3d 693, 699–700 (7th Cir. 2017); *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 715 (7th Cir. 2013). And under Illinois law, "[a] person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he or she knowingly," among other ways, "[d]estroys, alters, conceals or disguises physical evidence, plants false evidence, [or] furnishes false information[.]" 720 ILCS 5/31-4(a)(1).

Here, officers did not see anyone leave the residence before Perez approached the property and Plaintiff told the officers Grayson was not in the house when it is undisputed that he was in the house. This constitutes probable cause that Plaintiff obstructed justice, so her detention and arrest did not violate the Fourth Amendment. Based on these facts, no reasonable juror could find that Defendants did not have probable cause to arrest Plaintiff for obstruction of justice. *See Johnson v. Myers*, 53 F.4th 1063, 1068 (7th Cir. 2022) (whether probable cause exists is examined from an objective point of view, looking to what the officer knew at the time of the arrest).[5]

Plaintiff argues the probable cause was the product of the civil conspiracy between Cappelluti and Adams, which resulted in Defendants acting maliciously and entrapping Plaintiff by unfairly targeting her and insisting she come to the door. This is unconvincing for two reasons. First, probable cause is viewed objectively, rather than subjectively. *Id.* The facts described in the previous paragraph set forth the

---

[5] Because reasonable jurors could find probable cause existed at the time of Plaintiff's arrest, the Court finds it unnecessary to address Defendants' argument that the Lake County Grand Jury's indictment provided an independent basis of probable cause for the arrest.

11

objective facts known to the officers which warranted their reasonable belief that Plaintiff was committing the offense of obstruction of justice; the subjective intentions of Defendants are irrelevant. Second, the civil conspiracy was alleged against Cappelluti and Adams, whom have either been dismissed or settled with. No other defendant is alleged to be a part of this conspiracy and so there is no live case or controversy concerning the alleged civil conspiracy.[6]

The undisputed facts also demonstrate that no reasonable juror could find that the search of Plaintiff's home and seizure of her property violated the Fourth Amendment. An exception to the Fourth Amendment's warrant requirement is consent. *United States v. James*, 571 F.3d 707, 713 (7th Cir. 2009). "Consent searches are valid only if the consent was freely and voluntarily given." *United States v. Duran*, 957 F.2d 499, 502 (7th Cir. 1992). The Fourth and Fourteenth Amendments require consent to be voluntarily given, and not the result of duress or coercion. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973). Here, the bodycam footage shows Kaechele and Giamberduca reading Plaintiff the consent to search form and informing her of her right to refuse the consent to search. Plaintiff willingly signed the consent to search which authorized officers, in addition to searching the home, to seize any property they desired.

---

[6] In her response, Plaintiff attempts to implicate the Defendants by claiming "Giamberduca was made aware (at least in part) of Cappelluti and Adams' intentions" and that Defendants' conduct of unjustly targeting Plaintiff is evidence of the civil conspiracy. R. 103 at 6. These allegations are too late as they were never alleged in the complaint and Plaintiff never sought leave to amend the complaint to add these allegations.

12

Plaintiff argues her consent was involuntary and made under duress and coercion, citing her Lyme disease which affects her mental faculties,[7] alleged threats made by officers about jail time and the loss of her children, and that her husband first signed the consent under duress and based on Kaechele's and Giamberduca's allegedly false statements that a search warrant was issued. First, Grayson is not a party in this case and any alleged violations of his constitutional rights are separate and apart from Plaintiff's. Second, the record does not demonstrate any unduly coercive or deceptive police practices which would cause a reasonable juror to conclude that Plaintiff's consent was involuntary. Plaintiff was coherent and responsive and at no point does the bodycam footage show officers threatening Plaintiff.[8] Plaintiff does not tell the officers she cannot understand what they were saying or what she was reading due to her Lyme disease.[9]

---

[7] Plaintiff provides no expert reports or testimony on how Lyme disease affects one's mental faculties.

[8] Plaintiff posits, without any foundation, that the bodycam footage is incomplete and suspect. Plaintiff argues there is "direct testimony that the footage is incomplete or was strategically utilized" which establishes a question of material fact. R 103 at 8. This "direct testimony" comes from Plaintiff and Grayson themselves. And, other than the forced entry by the U.S. Marshalls, Plaintiff is unable to identify any gaps in bodycam footage during her interaction with officers outside her home. Plaintiff does not dispute that the U.S. Marshalls require local law enforcement to turn off their body cameras when they force entry into a home. Plaintiff's belief that the video evidence in this case is incomplete and that Defendants violated Lake County Sheriff's Office Body-Worn Camera Policy is based on suspicion alone and does not create a genuine issue of material fact.

[9] Despite her Lyme disease, the record demonstrates Plaintiff was able to comprehend the severity of the situation. During her questioning at Lakemoor PD, Plaintiff stated, "I don't feel comfortable answering questions where I don't know where this is going." R. 97 ¶ 33, Ex. 17 at 2:30 p.m.

## B. Fourteenth Amendment: Interrogations

During her detention, Plaintiffs was questioned by Perez, Kaechele, and other unnamed federal agents. Plaintiff contends that during this questioning, her Fourteenth Amendment substantive due process rights were violated when she was subjected to interrogation techniques that employed threats, intimidation, and undue force which "arguably shocks the conscience." R. 103 at 8. "A plaintiff may sue under § 1983 for police behavior that shocks the conscience, including conscience-shocking interrogation tactics." *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010) (internal citations and quotations omitted). "Lying to, threatening, or insulting a suspect does not shock the conscience." *Cairel v. Alderden*, 821 F.3d 823, 833 (7th Cir. 2016) (internal citations and quotations omitted). The "official conduct most likely to rise to the conscience-shocking level is the conduct intended to injure in some way unjustifiable by any government interest." *Chavez v. Martinez*, 538 U.S. 760, 775 (2003) (internal citations and quotations omitted). During her deposition, Plaintiff stated the officers were "hostile" and "rough" or telling her she could get home to her children if she cooperated. R 105 ¶ 36. Plaintiff is unable to point to any facts which would lead a reasonable juror to find that Perez or Kaechele were physically hostile or rough towards Plaintiff. In fact, the video evidence does not show any hostility or roughness used by any officer. And although the officers may have been insistent and making promises that she could return to her children if she cooperated, no reasonable juror could find that these tactics used with Plaintiff shock the conscience. For all these reasons, summary judgment is granted on Count III.

### III. Count IV

Count IV alleges Defendants violated Plaintiff's Fourteenth Amendment rights by denying her health care to address her Lyme disease and her inability to nurse her child or pump her breastmilk. When a detainee alleges a due process challenge to her medical care, she must show (1) that the defendants "acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case" and (2) that the conduct was objectively unreasonable. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018). The second part of the inquiry "focus[es] on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *McCann v. Ogle Cnty.*, 909 F.3d 881, 886 (7th Cir. 2018).

Although Plaintiff told Defendants about her Lyme disease, she never indicated needing special accommodations or medical attention. She was provided with food and water and was asked on several occasions if she needed anything. Plaintiff also never communicated a need to express her milk or that she was experiencing discomfort due to not pumping.[10] The record contains no evidence that any of the Defendants acted purposefully, knowingly, or recklessly in disregard to

---

[10] Plaintiff was offered a breast pump at the Lake County Jail, but refused it asking to have her own brought to her. Although the record is hazy on this point, presumably her personal pump was not brought to her. However, there is no allegation or evidence that the request at the Lake County Jail to have her own pump brought to her was made to Perez, who transported Plaintiff to the jail, or any other Defendant.

Plaintiff's Lyme disease or need to breastfeed. The undisputed facts, taken in the light most favorable to Plaintiff, also demonstrate that no reasonable juror could conclude that the Defendants' conduct was objectively unreasonable such that a constitutional right alleged in Count IV was violated.

Even if the Court were to assume a constitutional right was violated, Defendants would be entitled to qualified immunity on Count IV because the constitutional right was not clearly established. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established when existing precedent places the lawfulness of the particular conduct "beyond debate." *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) ("[W]e have stressed the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated'" the constitution.) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). Plaintiff bears the burden of proving that qualified immunity does not attach. *Findlay v. Lenderman*, 722 F.3d 895, 899 (7th Cir. 2013). Here, Plaintiff offers no cases, and the Court is unaware of any, which establish that it is a constitutional right for someone with Lyme disease to be treated in a certain fashion or that the right to breastfeed is a constitutional right. But if the right to breastfeed was a clearly established constitutional right, Defendants never denied her the right to pump her breastmilk.

Plaintiff points to *Hines v. Lake County*, No. 20-cv-05202, 2021 WL 2633305 (N.D. Ill. June 26, 2021), in an attempt to demonstrate Defendants were on notice that breastfeeding is a clearly established substantive due process right. Aside from the fact that *Hines* was decided in 2021 after the events at issue took place, the *Hines* court explicitly did "not reach the question of whether the right to breastfeed [a] child is a fundamental right . . . ." *Id.* at *2. Plaintiff also cites *Hines* as a means to revive her *Monell* claim, arguing the conduct in *Hines* (forcing a woman to dump her breastmilk) and this case documents a policy, pattern, and practice, and Plaintiff should be given the opportunity to re-plead. R. 103 at 15. Plaintiff's request for leave to amend her complaint is denied. The *Monell* claim was dismissed three years ago and discovery closed a year-and-a-half ago constituting an undue delay, and amending now would be unduly prejudicial and futile. *See Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). For all these reasons, summary judgment is granted on Count IV.

**IV.   Count V**

Count V alleges the Defendants failed to intervene in violation of the Fourteenth Amendment. For failure to intervene under § 1983, a plaintiff must establish an underlying constitutional violation. *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1049 (N.D. Ill. 2018) (holding that a § 1983 failure to intervene claim "rise[s] and fall[s] with the underlying constitutional violations"). Given the Court granted summary judgment on Counts III and IV and Plaintiff makes no argument that the

17

failure to intervene is based on some other underlying constitutional violations not alleged in Counts III and IV, the Court also grants summary judgment on Count V.

## Conclusion

For the foregoing reasons, the Court grants the motion for summary judgment. R. 95.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: March 26, 2025